IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND

NATIONAL ELECTRICAL BENEFIT       :
FUND, et al.                      :
                                  :
     v.                           :    Civil Action No. DKC 09-2831
                                  :
ADVANCED LIGHTING SYSTEMS,        :
INC.                              :
                                  :

                           **MEMORANDUM OPINION**

     Presently pending and ready for resolution in this action arising under the Employee Retirement Income Security Act of 1974 ("ERISA") is Plaintiffs' motion for default judgment. (Paper 6). For the reasons that follow, the motion will be granted.

**I.   Background**

     The National Electrical Benefit Fund ("NEBF") is a multi-employer employee pension benefit plan within the meaning of Section 3(2) of ERISA, 29 U.S.C. § 1002(2). It was established pursuant to an agreement entered into between the International Brotherhood of Electrical Workers ("IBEW") and the National Electrical Contractors Association. Employers agree to participate in the NEBF pursuant to collective bargaining agreements with the IBEW or one of its affiliated local unions. (Paper 1 ¶ 4). Trustees Lindell K. Lee and D.R. Borden, Jr., fiduciaries to the NEBF, 29 U.S.C. § 1002(21)(A), brought this action on behalf of NEBF. (Paper 1 ¶ 5).

Defendant Advanced Lightning Systems, Inc. is an employer engaged in an industry affecting commerce, is contractually and legally obligated to submit contributions to the NEBF, and is an employer within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5). Defendant is a Maryland corporation. (Paper 2 ¶ 6).

Defendant is a signatory, and has been a signatory continuously during all relevant periods, to collective bargaining agreements with IBEW Local Union 26. Local Union 26 acts as the collective bargaining representative of Defendant's employees. Pursuant to the collective bargaining agreements, Defendant has been and is currently obligated to submit contributions to the NEBF on behalf of the employees covered by the collective bargaining agreements. (Paper 1 ¶ 7). Defendant is also bound to follow all terms and conditions of the Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund ("Restated Employees Benefit Agreement"), which has governed the administration of the NEBF at all times relevant to this action. (Paper 1 ¶ 8).

Plaintiffs filed a complaint on October 27, 2009, but named the defendant as Advanced "Lighting" Systems, Inc. (Paper 1). Plaintiffs contend that Defendant was delinquent in making contributions to the NEBF from January 2003 through December 2007 on behalf of its employees who are covered by the collective bargaining agreements. (Paper 1 ¶ 8).

Defendant was properly served with the complaint on December 10, 2009 and a response was due on or before December 31, 2009. (Paper 4). Defendant failed to respond to the complaint. Plaintiffs filed motions for entry of default and for default judgment on February 17, 2010. (Papers 5 and 6). The clerk entered default on March 17, 2010. (Paper 7). Plaintiffs then filed an amended complaint on April 1, 2010, for the sole purpose of correcting the mistake in Defendant's name. The motion for default judgment seeks unpaid contributions from 2005 through 2007, plus interest, liquidated damages, audit fees, and attorney's fees.

Plaintiffs filed the first amended complaint with only one change: a correction of the misnomer in the caption. Under Fed.R.Civ.P. 15(a)(1)(A) (2009), Plaintiffs may amend as of course because Defendant has never served a responsive pleading.[1] No service of the amended complaint is required because "[n]o service is required on a party who is in default for failing to appear" and because no new claim for relief has been filed in this case. Fed.R.Civ.P. 5(a)(2).

---

[1] The original complaint was filed on October 27, 2009, but not served until after December 1, 2009. An amended version of Rule 15 went into effect on December 1, 2009, so that, now, amending as a matter of course is allowed under Fed.R.Civ.P. 15(a)(1)(B) (2010) for 21 days after service of a responsive pleading. Here, of course, there has been no responsive pleading filed. Under either version of the rule, Plaintiffs had the right to amend as a matter of course.

Moreover, the type of error here would not have invalidated a judgment. "As a general rule the misnomer of a corporation in a notice, summons . . . or other step in a judicial proceeding is immaterial if it appears that [the corporation] could not have been, or was not, misled." *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947). The court noted that:

> A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant . . . it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else.

Following the rule in *A.H. Fischer Lumber*, the Fourth Circuit upheld a default judgment in *Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218 (4th Cir. 1999), where the complaint's caption showed the incorrect name of the defendant. In *Morrel*, the plaintiff filed an application to correct or vacate a prior judgment, naming "The Miller Group Construction Company" as defendant. Judgment was entered against the defendant under its correct name, The Miller Group Construction Company, Inc. *Id*. at 220. The Fourth Circuit held that there was no possible way the Defendant could not know it was the intended defendant for a number of reasons, including the fact

that the defendant itself had left out the "Inc." designation in prior correspondence.

In *Morrel*, default judgment was upheld even without the filing of an amended complaint. The decision relied on the reasoning in *A.H. Fischer Lumber*, that "[t]he defendant had unquestionably been brought into the case, and . . . would have been bound without amendment by any judgment that might have been rendered therein." *Id*. at 225 (citing A.H. Fischer Lumber, 162 F.2d at 874).

Under Fed.R.Civ.P. 15(c), a complaint may be amended to change the party, and the complaint will relate back to the original complaint if certain conditions are met. In *Schiavone v. Fortune*, the Supreme Court explained that:

> Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune*, 477 U.S. 21, 29-30 (1986).

First, as required by the Supreme Court, the conduct set forth in the original complaint has not changed. The only change was the correction of Defendant's name. Regarding

factors two and three, as noted above, "service of process is not legally defective simply because the complaint misnames the defendant in some insignificant way."  *Morrel*, 188 F.3d at 224 (citing *United States v. A.H. Fischer Lumber Co.*, 162 F.2d at 873).  Such an error is termed a "misnomer," which occurs "when the correct party was served so that the party before the court is the one plaintiff intended to sue, but the name or description of the party in the complaint is deficient in some respect."  6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1498 (2nd ed. 1990).  The misnomer in the complaint has not prejudiced Defendant in any way.  Timely service was made at Defendant's principal place of business, and no reason exists to believe that Defendant would not have understood itself to be served despite the misnomer.  Therefore, factors two and three have been met.

Finally, service of the original complaint and Defendant's knowledge of the action occurred within the statute of limitations for actions regarding delinquent contributions.  Therefore, all four required factors have been met and the amended complaint relates back.

**II. Motion for Entry of Default Judgment**

The clerk of the court notified Defendant that it was in default on March 17, 2010.

**A. Standard of Review**

Pursuant to Fed.R.Civ.P. 55(b)(2), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment, upon the plaintiff's application and notice to the defaulting party, pursuant to Fed.R.Civ.P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002). The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *id*. (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party, *see S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon entry of default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not. *Lawbaugh*, 359 F.Supp.2d at 422. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages. . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Management Dynamics, Inc.*, 515 F.2d 801, 814 (2nd Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981)). While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S., Inc.*,

Civ. No. WDQ-09-3174, *3 (D.Md. April 16, 2010) ("on default judgment, the Court may only award damages without a hearing if the record supports the damages requested").

**B. Analysis**

The Restated Employees Benefit Agreement provides that the trustees of the fund are authorized to receive

> [] all costs of any audit; . . .
>
> [] liquidated damages [of] an amount up to 20 percent (20 %) of the delinquent amount; . . .
>
> [] lost interest from the delinquent amounts, to be calculated at a 10 percent (10 %) annual rate compounded monthly throughout the period of delinquency; . . .
>
> [] all costs, audit expenses, actuarial expenses, and attorneys fees incurred by the Trustees in enforcing the provisions hereof, whether by litigation or otherwise; . . .

(Paper 6, Attach. 1 § 6.9). Plaintiffs contend in their amended complaint that as a result of periodic audits they learned that Defendant had failed to pay contributions from January 2003 through December 2007. In their motion for default judgment, however, they only make requests for reimbursement for the time period of January 2005 through December 2007.[2] Explaining this

---

[2] In the amended complaint, Plaintiffs requested payment of delinquent contributions from January 2003 through December 2007, for a total of $13,037.25. They also requested interest at a rate of 10% per annum equaling $5,408.02, liquidated damages of $2,607.45, $680.00 in audit fees and attorneys' fees and costs. In the motion for default judgment, however, Plaintiffs now ask for delinquent contributions for the period

variation, Plaintiffs attach the affidavit of the manager of audits and delinquency of the NEBF, which states that no request for the older audits and delinquent contributions will be made because of the age of those audits. (Paper 6, Attach. 7 ¶ 5 "These audits were conducted in 2006. Given the age of these audit reports, NEBF makes no claim for these amounts here."). Because a sufficient reason for the deviation of amounts has been given, and due to the downward adjustment requested, the variation in damages between the amended complaint and the motion for default judgment is permissible.

Attachments 2-4 of the motion for default judgment demonstrate that the amounts due for 2005, 2006 and 2007 are $1,782.60, $2,469.03 and $4,692.79 respectively, and total $8,944.42. (Paper 6, Attachs. 2-4). Interest, calculated at an annual rate of 10 percent, compounded monthly, equals $2,960.90 as of the time of the motion for default judgment. Liquidated damages, calculated as 20 percent of the due contributions, equal $1,788.88.

In addition to seeking delinquent contributions to NEBF from January 2005 through December 2007, Plaintiffs also ask for lost interest, liquidated damages, audit fees, attorney's fees and costs, and other legal and equitable relief as the court

---

of January 2005 through December 2007, for a total of $8,944.42. Interest on this amount totals $2,960.90, liquidated damages are $1788.88, audit fees from 2005-2007 are $440.00 and attorney's fees and costs total $980.10.

deems appropriate. They have attached to their motion for default judgment several exhibits documenting these damages. (Paper 6, Attachs. 1-7).

Plaintiffs have shown that their attorney's fees and costs equal $980.10. (Paper 6, Attach. 6, at 2). Fees for the 2005, 2006 and 2007 audits were $140, $140 and $160 respectively, totaling $440.00.

In accordance with Section 6.9 of the Restated Employees Benefit Agreement the total amount owed is $15,114.30.

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion for default judgment will be granted. A separate Order will follow.


                                                                  /s/
                                DEBORAH K. CHASANOW
                                United States District Judge